**AMERICAN SHIPPING LINE, INC., Plaintiffs,**

v.

**MASSAN SHIPPING INDUSTRIES, INC., Ocean World Lines, Inc.; Colleen Ranieri; Robbins Fleisig Forwarding, Inc.; and M.E. Franks, Inc., Defendants.**

No. 93 Civ. 8022 (RLC).

United States District Court, S.D. New York.

Jan. 30, 1995.

Richard A. Zimmerman, New York City, for plaintiffs.

Haight, Gardner, Poor & Havens (Leonard L. Fleisig, of counsel), New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Defendants Ocean World Lines, Inc. ("OWL"), Colleen Ranieri, Robbins Fleisig Forwarding, Inc. and M.E. Franks, Inc. ("the moving defendants") move for an order staying all proceedings in the action filed by plaintiff American Shipping Lines, Inc. ("ASL") against them and all proceedings

regarding the cross-claims filed by them against defendant Massan Shipping Industries, Inc. ("Massan"), pending an arbitration of the claims asserted by plaintiff against defendant Massan Shipping Industries, Inc. Plaintiff opposes so much of the motion as seeks a stay of all proceedings against the moving defendants but does not oppose so much of the motion as seeks a stay of all proceedings regarding the movants' cross-claims against Massan.

## I.

In January 1993, defendant OWL booked cargo space with defendant Massan to transport milkpowder and butteroil from Houston, Texas to Algeria. Massan, in turn, entered into a voyage charter agreement with plaintiff ASL, the chartered owner of the motor vessel Nasaud, for the ocean carriage of cargo from Houston to Algeria. OWL subsequently delivered the milkpowder and butteroil to Massan, and it was loaded aboard the vessel.

When the Nasaud arrived in Algeria in March 1993, Algerian authorities found that the milkpowder was tainted and refused to allow the cargo to be discharged from the vessel. An Algerian court subsequently placed the vessel under arrest as security for a claim brought by the cargo receiver and the insurance underwriter of the cargo for remuneration for damage to the milkpowder. The vessel was released over forty days later after plaintiff settled the cargo claim and paid $93,145 to the insurance underwriter's account.

Plaintiff brings this action under maritime law, the Federal Bills of Lading Act, and state law seeking indemnification for the money it spent to obtain the release of the vessel and for the damages it claims it incurred during the vessel's release, and seeking punitive damages and attorney's fees. It seeks to hold the following defendants jointly and severally liable for the damages it alleges: Massan; OWL; Colleen Ranieri, a line manager for OWL; Franks, the shipper of the palletized milkpowder; and Robbins Fleisig Forwarding, the ocean freight forwarder for defendant Franks.

There are two primary disputes between the parties. First, plaintiff alleges that the milkpowder was insufficiently packaged and improperly loaded and discharged by OWL, Franks and Massan. The moving defendants counter that the milkpowder was properly packaged and stored and that it was damaged by being stowed on board the ship in the presence of a noxious substance. Secondly, plaintiff alleges that OWL and the other moving defendants prepared a bill of lading that falsely indicated that the cargo was "clean," or properly packaged and loaded, and which failed to indicate that the vessel was not responsible for loading, stowing and discharging the cargo. It alleges that Massan and the other defendants knew that the bill of lading was false and conspired with OWL to conceal this fact. In addition, the moving defendants have cross-claimed against Massan.

The charter agreement between ASL and Massan contains an arbitration clause enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1988 & supp. 1993), so the claims by ASL against Massan will be arbitrated and the federal proceedings between them are stayed pending arbitration pursuant to a stipulation. The other defendants have refused to join the arbitration, but they insist that all proceedings involving them should be stayed as well pending the outcome of the arbitration.

## II.

This court has jurisdiction over the maritime claims and the Federal Bills of Lading Act claims pursuant to Article III of the Constitution, and it has pendent jurisdiction over the state law claims.

## III.

In order to encourage arbitration of claims, the Federal Arbitration Act allows parties to an arbitration to obtain a stay of federal proceedings regarding the claims that they are arbitrating, pending the conclusion of the arbitration. 9 U.S.C. § 3 (1988 & supp. 1993). Non-parties to an arbitration do not have this right, but they may petition a federal court to grant a stay pursuant to its inherent power to control its docket. *Sierra*

*Rutile Ltd. v. Katz,* 937 F.2d 743, 750 (2d Cir.1991). The issuance of such a stay is firmly within the district court's discretion. *McCowan v. Sears, Roebuck & Co.,* 722 F.Supp. 1069, 1076 (S.D.N.Y.1989) (Carter, J.).

■■■ "Federal policy, as embodied in the Federal Arbitration Act, strongly favors arbitration as an alternative dispute resolution process." *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir.1993). Courts must act to enforce arbitration agreements protected by the Act, even though arbitration may sometimes result in "piecemeal resolution," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983); *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218–221, 105 S.Ct. 1238, 1241–43, 84 L.Ed.2d 158 (1985), and they should ensure that parties who elect to arbitrate some of their claims do not "face the unhappy choice of either forgoing arbitrable claims in order to obtain prompt consideration of the other claims or waiting months, if not years, before their nonarbitrable claims will be heard by a federal court." *Chang v. Lin,* 824 F.2d 219, 222 (2d Cir.1987). The Second Circuit has ruled that "[a]t least where [claims brought under the Securities Act of 1933] are concerned, arbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation." *Id.* at 223. The rights involved in this case—namely those protected under maritime law, the Federal Bills of Lading Act, and those under state law—are no less compelling than those protected under the Securities Act of 1933, and therefore the court adopts the "compelling reasons" standard for this case. *See Montauk Oil Transportation Corp. v. Steamship Mutual Underwriting Ass'n (Bermuda) Ltd.,* 859 F.Supp. 669, 678 (S.D.N.Y.1994) (Wood, J.) (applying "compelling reason" test to litigation under the Federal Water Pollution Control Act).

■■■ Compelling reasons may exist "where the pending proceeding is an arbitration in which issues involved in the case may be determined." *Sierra Rutile Ltd.,* 937 F.2d at 750 (quoting *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.,* 339 F.2d 440, 441 (2d Cir.1964)). There are two questions involved in this test. First, whether there are issues common to the arbitration and the court proceeding, and second, whether those issues will be finally determined by the arbitration. If this test is met, the moving party has the burden of showing that the non-arbitrating party will not hinder the arbitration, that the arbitration will be resolved within a reasonable time, and that such delay that may occur will not cause undue hardship to the non-moving parties. *Id.* at 750.

In this case, the two proceedings will almost certainly have issues in common, including the question of who caused the damage to the milkpowder and whether a false bill of lading was prepared. At the same time, there will almost certainly be issues raised in the court proceeding that will not be raised in the arbitration since the moving defendants are charged with actually preparing the false bill of lading and Massan is charged solely with conspiring to prepare it.

■■■ More importantly, it is not at all clear that the arbitration will finally decide even those issues common to both the arbitration and the court proceedings. "[I]t is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims," *Dean Witter Reynolds, Inc.,* 470 U.S. at 222, 105 S.Ct. at 1243, and it is never possible to determine the preclusive effects of a given arbitration on a proceeding until after the arbitration has ended. *Id.* at 223, 105 S.Ct. at 1243–44. The moving parties have indicated that they will not be bound by the arbitration, rendering it inappropriate to grant a stay of the proceedings involving the moving defendants. *Sierra Rutile Ltd.,* 937 F.2d at 750. It makes no sense to stay proceedings pending the end of the arbitration when any outcomes of the arbitration with which the moving defendants disagree will have to be relitigated in the federal courts anyway.

The moving defendants warn that if the proceedings are not stayed, Massan and ASL may have to follow two sets of discovery

procedures (one under the Federal Rules of Civil Procedure and one promulgated by the Society of Maritime Arbitrators). The moving defendants' argument about the difficulty of following two different sets of discovery procedures is not persuasive. ASL opposes the motion for the stay of the proceedings by it against the moving defendants, and Massan has not responded to the motion. It is disingenuous of the moving defendants to argue that the stay must be denied on account of inconvenience to parties who oppose or at least accede to the motion for the stay. Furthermore, both Massan and ASL bargained for the arbitration clause in their contract, and they must now abide by the consequences of that bargain. *See Tai Ping Ins. Co., Ltd. v. M/V Warschau,* 731 F.2d 1141, 1145–1146 n. 4 (5th Cir.1984) (denying stay where the only inconvenience and duplication would be suffered by arbitrating parties and that inconvenience was a consequence of their agreement). It is similarly disingenuous for the moving defendants to argue that their only goal is to further judicial economy when judicial economy would have been better served had they submitted their claims to arbitration.

▆▆▆ Even if there were compelling reasons to grant a stay, the court could not grant it because the moving defendants have not met their burden of showing that the plaintiff would not face undue hardship from the delay in the proceedings. In all cases, a delay in the proceedings creates the danger that evidence may be lost. *Chang,* 824 F.2d at 222. Here, much of the evidence that the plaintiffs will need to make their case regarding their federal court claims exists only in Algeria. Civil unrest and hostility to foreigners seem to be escalating rapidly in that country, meaning that delay will be even more prejudicial here than in most cases. The moving defendants offer to participate in discovery notwithstanding the stay. This offer is not an adequate substitute for court-ordered discovery pursuant to the Federal Rules of Civil Procedure, however, because it does not provide a way for the parties to settle discovery disputes or for the plaintiff to compel discovery from Massan and non-parties.

Finally, both plaintiff and moving defendants note that were this court to grant a stay, it would be appropriate to limit the duration of the stay to ensure that the arbitration would not unduly delay the court proceedings. *See, e.g. Sierra Rutile Ltd.,* 937 F.2d at 750; *Nederlandse Erts–Tankersmaatschappij, N.V.,* 339 F.2d at 442. Both parties agree that a limit of six months would be appropriate. *See, e.g. Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.,* 640 F.Supp. 175, 179 (S.D.N.Y.1986) (Edelstein, J.). Unfortunately, due to court congestion, this motion was submitted in July 1994 and is being decided in January 1995. Consequently, a period of six months has already passed, and even if a stay were granted its duration would have expired already.

## IV.

Plaintiff ASL does not oppose moving defendants' motion for a stay of the proceedings on the cross-claim against Massan, and Massan has not responded to the moving defendants' motion. Nonetheless, considerations of judicial economy warrant denial of the motion for stay of the cross-claim proceedings in light of the fact that the other proceedings will proceed.

## V.

The motion for a stay of the proceedings regarding the claims brought by ASL against the moving defendants and by the moving defendants against Massan is denied.

IT IS SO ORDERED.