**SECURITY INSURANCE COMPANY OF HARTFORD, Plaintiff,**

v.

**TRUSTMARK INSURANCE COMPANY, Defendant.**

No. CIV.3:01 CV 2198(PCD).

United States District Court, D. Connecticut.

Aug. 9, 2003.

Frank F. Coulom, Jr., Marion B. Manzo, Robinson & Cole, Hartford, CT, Kathryn C. Ellsworth, Robert J. Morrow, Erick M. Sandler, Dewey Ballantine, New York City, David J. Grais, James L. Hallowell, Mark B. Holton, Kathryn E. Nealon, Alia L. Smith, Christine Y. Wong, Gibson, Dunn & Crutcher, New York City, Jeffrey M. Thomen, McCarter & English, Hartford, CT, for Security Ins. Co. of Hartford.

Lawrence I. Brandes, Harry P. Cohen, Michael G. Dolan, Ivan J. Dominguez, Seth R. Klein, Brian J. O'Sullivan, Cadwalader, Wickersham, Taft, New York City, Brian C. Fournier, Margaret E. Haering, David A. Slossberg, Hurwitz & Sagarin, Milford, CT, Dennis G. LaGory, William E. Meyer, Jr., Schiff, Hardin & Waite, Chicago, IL, for TIG Ins. Co.

Everett J. Cygal, Sharon A. Doherty, Paula J. Morency, Michael Mullins, Amy M. Rubenstein, Ronald S. Safer, David Spector, Schiff, Hardin & Waite, Chicago, IL, Jeffrey R. Hellman, Jeffrey M. Sklarz, Zeisler & Zeisler, P.C., Bridgeport, CT, for Trustmark Ins. Co.

### RULING ON MOTION TO STAY PENDING ARBITRATION

DORSEY, District Judge.

Third party defendant TIG Insurance Co. ("TIG") moves to stay the present proceedings in deference to its arbitration proceedings with plaintiff.

### I. BACKGROUND

TIG and plaintiff entered into a Reinsurance Agreement, effective January 1, 1999, which contains an arbitration clause providing that:

> As a condition to any right of action hereunder, any irreconcilable dispute between the parties to this Agreement

shall be submitted to a board of arbitration composed of two arbitrators and an umpire meeting at a place to be agreed by the board.... The majority decision of the board shall be final and binding upon all parties to the proceeding. Judgment may be entered upon the award of the board in any court having jurisdiction.

Plaintiff and defendant also executed their Retrocession Agreement, effective January 1, 1999, by which defendant agreed to insure 100% of the risk from the Reinsurance Agreement.

By letter dated November 2, 2001, defendant notified plaintiff that it believed that TIG defrauded its agent WEB and recommended that plaintiff cancel the Reinsurance Agreement.[1] In response, plaintiff requested information supporting the allegations, indicated that it would look into the allegations and requested, in light of the possibility of recission of both the Reinsurance and Retrocession Agreements, that defendant deposit an amount equal to premium paid by plaintiff under the agreement into an escrow account. After the exchange, defendant canceled the Retrocession Agreement, to which plaintiff responded by filing the present complaint. Plaintiff allegedly has withheld $14 million in payments to TIG owed pursuant to the Reinsurance Agreement.

On May 3, 2002, defendant filed a third-party complaint against TIG alleging fraud and negligent misrepresentation "based upon the material misrepresentations and omissions made by [TIG] in its attempt to transfer to its unsuspecting reinsurers tens of millions of dollars in losses stemming from its under-performing workers' compensation business." Defendant seeks damages equal to "all net losses [defendant] has paid or is required to pay to [plaintiff] on the TIG business retroceded to [defendant] by [plaintiff]."

By letter dated June 27, 2002, TIG notified that it was invoking the arbitration clause and initiating arbitration. It further indicated that "TIG will seek in the arbitration, inter alia, an award: (1) declaring the Treaty to be valid and enforceable; (2) finding that the Treaty was not induced by fraud or negligent misrepresentation as alleged by [defendant]; (3) ordering [plaintiff] to pay all outstanding balances, together with interest, costs and attorneys' fees; and (4) granting TIG any further relief that the panel deems appropriate."

## II. DISCUSSION

TIG argues that the arbitration will resolve the third-party fraud and negligent representation claims and render moot the majority of claims in the original complaint, thus a stay should be ordered in the interest of judicial economy. Both plaintiff and defendant oppose TIG's motion.

Stay is not sought pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, but

---

**1.** The letter provided that "[i]n sum, [defendant] believes that the information produced by TIG and AON demonstrates, at a minimum, that TIG: (1) knew it had significant problems the VSC block; (2) knew that it would take a year for TIG to extricate itself from the TIG/VSC Agreement; and (3) attempted to solve its problems by passing these known losses on to [plaintiff]. This was accomplished by the misrepresentations and omissions described above. Indeed, obtaining this cover was so important to TIG that TIG agreed to a contractual provision that it knew it could not keep. [Defendant] believes that these facts present a strong case for recission of the Reinsurance Agreement. Furthermore, [defendant] is in the process of reviewing information relating to the Innovus and ManagedCorp segments that shows nearly identical problems.... Given all this, [plaintiff] should refrain from paying losses or taking any other actions that could be construed as an affirmation of the Reinsurance Agreement."

rather pursuant to this Court's inherent authority to manage its cases. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936)("power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). The party requesting a stay must show "a clear case of hardship or inequity in being required to go forward." *Id.; see also Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir.1991)("movant bears a heavy burden of showing necessity for the stay"). The moving party must further "demonstrate to the satisfaction of the court that they have not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship." *Nederlandse Erts–Tankersmaatschappij v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir.1964).

█ It is not apparent that a stay would serve the interest of judicial economy. Arbitration has not yet commenced and the initial delay proposed applies only to matters preliminary to the actual arbitration hearings. *See Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3d Cir.1988)("The considerations counseling moderation ... do not apply in this case where the stay is to await arbitration and the party objecting to the stay is also a party to the arbitration."). According to TIG's schedule, the initial briefing will not be completed prior to December 20, 2002. The arbitration clause provides that the arbitration panel must render its decision within sixty days of the hearing. At best case, no award need be issued prior to February 20, 2003. In light of the third-party complaint filed three months ago and the original complaint filed ten months

ago, it is not apparent that arbitration would provide the more expedient resolution.

█ It is similarly not apparent that arbitration between TIG and plaintiff would resolve a significant number of issues among all parties. Two considerations determine whether a stay is appropriate in light of the claims involved in the litigation: (1) whether arbitration and the court proceedings involve common issues and (2) if arbitration will produce a final determination of those common issues. *Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.*, 942 F.Supp. 757, 760 (D.Conn.1996).

TIG argues that "[a]ll that remains of this action after the Arbitration concludes will be [plaintiff's] claims that [defendant] acted in bad faith and in breach of certain statutes by dishonoring its Retrocession Contract." Assuming that it is appropriate for TIG to submit the issue of fraud and negligent misrepresentation as alleged by defendant in its third-party complaint in its arbitration with plaintiff, it is not clear that the arbitration will afford a substantial resolution of all the issues herein involved. There is, as an initial matter, the question of whether defendant would be precluded from litigating its claims having declined to participate in the arbitration. *See SCAC Transport (USA) Inc. v. S.S. DANAOS*, 845 F.2d 1157, 1163 (2d Cir.1988)(describing process of "vouching in" indemnitor to arbitration as nonparty to arbitration agreement); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223, 105 S.Ct. 1238, 84 L.Ed.2d 158(1985) ("arbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings"). Even if determinations as to the issues of fraud and negligent misrepresentation resolved the issues in the third party complaint, it is further not apparent that the

majority of issues in the original complaint, which involve the propriety of defendant's cancellation of the Retrocession Agreement and its conduct in canceling the Agreement, would be resolved thereby. As the parties were initially prepared to resolve these claims in the original complaint without impleading TIG, it is dubious that resolution of TIG's dispute with plaintiff in the Reinsurance Contract will serve as a panacea in a dispute that has proceeded in one form or another for over two years. It is therefore likely that a substantial number of issues would remained unresolved after the conclusion of arbitration.

Finally, TIG has not established a clear case of hardship or inequity in going forward. *See Landis,* 299 U.S. at 254–55, 57 S.Ct. 163. On occasion it is necessary to require simultaneous arbitration and litigation. *See Chang v. Lin,* 824 F.2d 219, 223 (2d Cir.1987)("At least where '33 Act claims are concerned, we now hold that arbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation"). This requirement, in and of itself, will thus not suffice to justify a stay. As no other prejudice is alleged sufficient to offset the shared interest of plaintiff and defendant in resolving claims as to their Retrocession Agreement, *see Landis,* 299 U.S. at 255, 57 S.Ct. 163 (requiring that courts "weigh competing interests and maintain an even balance" in determining whether to stay case), TIG has not carried it burden in establishing that a stay is appropriate under the circumstances.

III. CONCLUSION

TIG's motion to stay (Doc. 64) is **denied**.
SO ORDERED.