CARGILL FERROUS INTERNATIONAL, et al.

v.

The M/V ANATOLI, in rem, et al.

Civil Action No. 95–1361.

United States District Court, E.D. Louisiana.

April 10, 1996.

---

Marva Jo Wyatt, Iliaura Hands, O'Neil, Eichin & Miller, New Orleans, LA, for Cargill Ferrous International, a division of Cargill Inc.

Robert Bryan Deane, Eric J. Simonson, Chaffe, McCall, Phillips Toler & Sarpy, New Orleans, LA, for Tarpon Shipping Co., Ltd.

Donald L. King, Jones, Walker, Waechter Poitevent Carrere & Denegre, New Orleans, LA, for American Commercial Barge Line Company.

Mary Campbell Hubbard, Eric P. Halber, Rice & Fowler, New Orleans, LA, for Brazshipping Maritime LTDA, Handy Bulk Carriers and Marmaras Navigation Limited.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court are the third-party defendants' motions to dismiss or, alternatively, to stay pending arbitration. For the reasons that follow, the motions are DENIED.

### Background

On March 19, 1994 Tarpon Shipping Co., Ltd. time chartered its vessel, the M/V ANATOLI, to Handy Bulk Carriers. The charter party requires Handy Bulk to perform all cargo handling under the supervision of the Captain. The Captain must verify and sign all bills of lading in conformity with the mate's and tally clerk's receipts. The Captain may also authorize, in writing, charterers or their appointed agents to sign the bills of lading.

The plaintiff Cargill Ferrous International, a Division of Cargill, Inc., hired the M/V ANATOLI to transport some packaged steel coils. When the coils were loaded, the ship's chief officer observed that the packaging was damaged.[1] The master of the vessel authorized Brazshipping, Handy Bulk's agent, to sign the bills of lading on his behalf "in strict accordance with the mate's receipts as to quantity, description and marks of cargo loaded, and that all clauses or remarks contained in the mate's receipts are endorsed in full on the bills of lading." Brazshipping issued clean bills of lading despite the noted damage.

When the ship arrived at the end of the voyage, it was noted that the coils were rusted. Cargill sued Tarpon for the damage to the cargo. Tarpon then brought in Handy Bulk and Brazshipping as third-party defendants. Tarpon also tendered these parties as direct defendants to the plaintiffs under Rule 14(c) of the Federal Rules of Civil Procedure. Tarpon claims that any damages payable to Cargill resulted from the negligence of Handy Bulk and Brazshipping.

Handy Bulk now moves to dismiss[2] the third-party complaint, asserting that it owes no duty of indemnity to Tarpon. Alternatively, Handy Bulk moves to stay the suit pending arbitration as required by the charter party.

## I.

### A. Motion to Dismiss

#### 1

█ A 12(b)(6) motion may be treated as a motion for summary judgment under Rule 56 if matters outside the pleadings are raised. Because the parties have presented outside materials, the Court will treat this motion as a motion for summary judgment. Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact so that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

█ The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this regard, the non-moving party must do more than simply deny the

---

1. The officer noted in his records that some of the coils had broken straps, damaged protection rings, and crushed packages.

2. The third-party defendants did not specifically refer to Rule 12(b)(6). However, their motion papers make it clear that the basis for dismissal is failure to state a claim upon which relief can be granted.

allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir.1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.* Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 549 (5th Cir.1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514.

2

The third-party defendants contend that the charter party does not provide for a right of indemnity. The parties signed a New York Produce Exchange form time charter agreement. The form contract contains a provision that requires the charterer to indemnify the owner for inconsistencies in a bill of lading when the charterer has signed the bill. This provision, however, was deleted from the contract between the parties. The third-party defendants argue that deletion of this provision relieves them from any obligation to indemnify the owners.

■ The third-party defendants fail to recognize that their obligation to indemnify Tarpon may arise outside the contract. Tarpon contends that Brazshipping issued a clean bill of lading even though the ship's mate had noted damage to the packaging of the coils. A bill of lading is an acknowledgment by a carrier that it has received goods for shipment. *West India Industries, Inc. v. Tradex, Tradex Petroleum Services,* 664 F.2d 946, 949 (5th Cir.1981) (citing G. Gilmore & C. Black, The Law of Admiralty § 3–1, at 93 (2d ed. 1975); 1 T. Parsons, A Treatise on the Law of Shipping and the Law and Practice of Admiralty 190 (Boston 1869)). The bill of lading is also a contract of carriage. *Id.* As such, a clean bill of lading directly affects the rights of the shipper. Many decisions have condemned a shipper for issuing a clean bill of lading when it knew that the goods were damaged. *T.J. Stevenson & Co. v. 81, 193 Bags of Flour,* 629 F.2d 338, 372–73 (5th Cir.1980). *See also Austin Nichols &*

*Co. v. S.S. Isla De Pany,* 267 U.S. 260, 45 S.Ct. 269, 69 L.Ed. 603 (1925); *Portland Fish Co. v. States S.S. Co.,* 510 F.2d 628 (9th Cir.1974); *Cummins Sales & Service, Inc. v. London & Overseas Ins. Co.,* 476 F.2d 498 (5th Cir.), *cert. denied* 414 U.S. 1003, 94 S.Ct. 359, 38 L.Ed.2d 239 (1973); *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009 (2d Cir.1972); *Yeramex International v. S.S. Tendo,* 1977 A.M.C. 1807 (E.D.Va.1977).

■ The third-party defendants now seek to exonerate themselves from any possible liability solely because the indemnity provision in the charter party was deleted. A right to indemnity, however, always exists "between a vessel owner and a charterer when one is held liable for a fault for which the other is primarily liable." *Nissho–Iwai Co. v. M/T Stolt Lion,* 617 F.2d 907, 913 (2d Cir.1980). The fact that the parties chose to delete the indemnity language from the charter party does not establish that they intended to preclude the right of indemnity if the charterer failed to issue a conforming bill of lading. Indeed, deletion of the provision should not exonerate the third-party defendants for their possible negligence.

This argument is further bolstered by the nature of a Rule 14(c) impleader. Rule 14(c) provides:

> Admiralty and Maritime Claims. When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make any defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

The significance of Rule 14(c) is that the plaintiff is now obligated to proceed to judgment against the third-party defendants. Likewise, the third-party defendants are required to answer the plaintiff's complaint.[3] As such, a third-party defendant stands in the same position as a co-defendant. The third-party defendants present no evidence suggesting that the plaintiff could not prevail against them. Thus, dismissal is improper because Handy Bulk and Brazshipping could be found wholly or partly liable to the plaintiff for damage to the cargo.

### B. Motion to Stay Pending Arbitration

■ Alternatively, the third-party defendants ask the Court to stay these proceedings pending arbitration. The Federal Arbitration Act, 9 U.S.C. § 1 et. seq., establishes a federal policy that favors enforcement of arbitration agreements in commercial and maritime matters. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). Arbitration, however, is a matter of contract and cannot be compelled without an agreement. *Neal v. Hardee's Food Systems, Inc.,* 918 F.2d 34, 37 (5th Cir.1990). The agreement must be in writing and evidence a transaction involving interstate or international commerce. 9 U.S.C. § 2. Any suit that can be settled under an arbitration agreement brought in the district court must be stayed. *Id.* § 3.

■ In ruling on a motion for a stay, the Court must first determine whether there is a written agreement to arbitrate, and then whether any of the issues raised are within the reach of that agreement. *Complaint of Hornbeck Offshore (1984) Corp.,* 981 F.2d 752, 754 (5th Cir.1993). Any doubt concerning the scope of an arbitration clause of a contract must be resolved in favor of arbitration. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986); *Mar–Len of Louisiana,*

*Inc. v. Parsons–Gilbane,* 773 F.2d 633, 635 (5th Cir.1985). The weight of the presumption is heavy; arbitration must not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Mar–Len,* 773 F.2d at 635.

The charter party contains a clause that requires arbitration of any dispute between the vessel owners and charterers. Although the dispute between Tarpon and the third-party defendants is within the arbitration clause in the charter party, Cargill is not a party to that agreement. The third-party defendants, however, maintain that the entire suit must nevertheless be stayed pending arbitration.

■ It would be unfair to force Cargill to delay its case pending arbitration. The mandatory stay provisions of FAA do not apply to those not contractually bound by the arbitration agreement. *In re Talbott Big Foot, Inc.,* 887 F.2d 611, 614 (5th Cir.1989). FAA's goal of "ensuring judicial enforcement of privately made agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985), is not advanced by forcing a party that has not agreed to arbitrate to delay litigation of its claims. *See Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.,* 859 F.Supp. 669, 677 (S.D.N.Y.1994). Thus, the mandatory stay provisions of FAA do not apply to this case.

■ The Court also has power to issue a discretionary stay. A district court has inherent power to regulate its case flow, *Landis v. North Am. Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936), but this authority must not be abused. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Generally, the moving party bears a heavy burden to justify the stay. Further, the Court should tailor the

---

3. The comments to the 1966 amendments state: Rule 14 was modeled on Admiralty Rule 56. An important feature of Admiralty Rule 56 was that it allowed impleader not only of a person who might be liable to the defendant by way of remedy over, but also of any person who might be liable to the plaintiff. The importance of this provision was that the defendant was entitled to insist that the plaintiff proceed to judgment against the third-party defendant.

stay to avoid prejudicing the other litigants. *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,* 761 F.2d 198, 204 n. 6 (5th Cir.1985) (citing *Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co.,* 339 F.2d 440 (2d Cir.1964)). The third-party defendants have failed to meet their burden. They do not suggest, nor can the Court find, a means of tailoring the stay to avoid prejudicing the plaintiff.

Accordingly, third-party defendants' motions to dismiss and, alternatively, to stay pending arbitration are both DENIED. The motion to stay pending arbitration is denied without prejudice.[4]

4. If the parties are able to tailor an agreement that will not prejudice the other litigants, this Court will consider it by way of a new motion or joint submission.